IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TIFFANY GILLEYLEN                                                           PLAINTIFF

V.                                       CIVIL ACTION NO. 1:16-cv-94-SA-DAS

CITY OF TUPELO, MISSISSIPPI                                       DEFENDANT

MEMORANDUM OPINION

This matter is presently before the Court on Defendant's Motion for Summary Judgment [52]. Plaintiff responded, and Defendant Replied.

*Factual and Procedural Background*

Tiffany Gilleylen has been a police officer with the Tupelo Police Department since 1999. In 2005, Gilleylen transferred from patrol officer to the position of school resource officer (SRO), but moved back to patrol after she was promoted to corporal. Gilleylen's record is not spotless; she has received at least two counseling sessions, has been suspended and has been placed on probation at least once. However, she maintains that she was a dedicated officer who has an excellent record, considering the amount of time that she has been employed by the Tupelo Police Department.

In February 2015, Gilleylen interviewed for the Sergeant's position. A panel consisting of the four patrol lieutenants conducted the interviews of seven candidates. Each of the lieutenants on the interview panel scored each applicant in ten areas, and they gave their interview sheets to the moderator, Captain Tim Clouse, who totaled each score sheet. Purportedly, the applicant with the highest average score was nominated to the Chief of Police, Bart Aguirre for hire. While Chief Aguirre had full authority to reject the interview panel rankings, the uncontradicted

testimony is that in each instance during his tenure as TPD chief he has accepted the rankings of the interview panel and awarded the promotion to the highest ranked candidate.

The practice of the Tupelo Police Department is to retain interview scores for one year. The Department then fills open spots on a rolling basis according to the applicants' interview scores on file. Furthermore, three out of the four panel members testified that they only considered interview performance in their calculations, and not their previous knowledge or experience with the candidates in making their choices. In the February interview, Plaintiff ranked third of seven, with Lee Miller being ranked first and Clay Hassel being ranked second. Therefore, Miller was placed in the immediately available position.

In June of 2015, new interviews were conducted in order to fill an open position as school resource officer sergeant, but again, Gilleylen did not rank first and was not given the position. The interview panel ranked Jon Bramble as the highest applicant, and he was promoted. In September 2015, the second ranked officer from the February interviews, Clay Hassell, filled the next patrol sergeant position.

Plaintiff alleges that both Miller and Hassell's records indicated that they were far less qualified for the position of sergeant. For example, Miller was purportedly involved in some unreported verbal incident involving an African American Municipal Court Judge two weeks before the interviews. Other previous supervisors testified that it was difficult to provide Miller with criticism, and that he had issues with documentation and poor attitude. Furthermore, Clay Hassell had been demoted just before receiving the corporal position, and had a history of tardiness, purportedly.

Gilleylen filed her original EEOC charge on July 6, 2015 alleging that TPD had discriminated against her because she is an African American female. However, she was

promoted to the patrol sergeant position in October, 2015. Gilleylen argues that this promotion was merely in response to her EEOC charge, and that TPD was attempting to hide its discriminatory motive. TPD counters that the promotion was due, as she was the third ranking officer, and this was the third available position for patrol sergeant. Gilleylen believes that she was not promoted because of a discriminatory policy allowing interviewers to conduct subjective interviews, which results in the inability for black police officers to become promoted. Furthermore, she alleges that though she was more qualified, other white men were given the promotions unfairly even though they were very recently reprimanded for disciplinary infractions.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when ... both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

To succeed on a claim for racial discrimination under Title VII or Section 1981, a plaintiff may show a *prima facie* case either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Larry v. White*, 929 F. 2d 206, 209 (5th Cir. 1991) (plaintiff must prove racially discriminatory purpose of act to demonstrate Section 1981 or Section 1983 violation), *cert. denied*, 507 U.S. 1051, 113 S. Ct. 1946, 123 L. Ed. 2d 651 (1993); *see also Lee v. Conecuh Cty. Bd. of Ed.*, 634 F. 2d 959, 961–62 (5th Cir. 1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If a plaintiff establishes a presumption of discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and a plaintiff asserting discrimination must establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Plaintiff, bringing claims of race and gender discrimination, does not seek to prove her case with direct evidence, but instead presents circumstantial evidence under the *McDonnell Douglas Corp. v. Green* burden shifting framework. 411 U.S. 792, 93 S. Ct. 1817. *Larry*, 929 F. 2d at 209, *cert. denied*, 507 U.S. 1051, 113 S. Ct. 1946, 123 L. Ed. 2d 651 (1993); *see also Lee*, 634 F. 2d at 961–62.

Plaintiff alleges that she has established three incidents of discrimination. She was passed over for promotion as sergent of patrol twice in 2015 and was denied a position as a school resource sergeant in June 2015. Defendant concedes that Plaintiff has established a *prima facie* case of racial and gender discrimination regarding these claims, but argues that Plaintiff has failed to create a genuine issue of material fact tending to show it chose other candidates for discriminatory reasons.

Defendant cites the Plaintiff's lack of interview success as its nondiscriminatory reason for failing to promote Plaintiff.

*A. Patrol Sergeant Promotions*

Defendant argues that panel scores from interviews held in January 2015 solely determined the promotion decisions for patrol sergeant. Four lieutenants, who are all white, served as the interviewing board for the sergeant of patrol posting. Lieutenant James Hood,

Lieutenant Marty Mask, Lieutenant Doug Mansell and Captain Tim Bell[1] interviewed candidates and scored each person using interview forms provided by Captain Clouse, who was the interview panel moderator. Three of the interviewers testified that they based the interview scores solely on the interviews and not from their personal experiences with the candidate. Additionally, the sheets provided guidelines for scoring each category. While the interview forms prompted several questions, they provoked mostly a subjective opinion and ranking of the candidates.

An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection. *Alvarado*, 492 F.3d at 616–17 (citing *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004) (recognizing that *McDonnell Douglas* does not preclude an employer from relying on subjective reasons for its personnel decisions). However, such a reason will satisfy the employer's burden of production "only if the employer articulates a clear and reasonably specific basis for its subjective assessment." *See Patrick*, 394 F.3d at 316–17( "to rebut an employee's *prima facie* case, a defendant employer must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee"); (applying *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) ("A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion")).

Although Defendant has argued that Plaintiff scored lower during the interview than the comparators, Defendant has not provided any evidence of why the panel rated the other candidates higher than it rated Plaintiff. To be sure, Plaintiff does not dispute that her final score

---

[1] Bell was a lieutenant at the time of the interviews.

in the promotion sheets placed her lower than the two top scorers. Plaintiff contends that the score sheets were determined by subjective criteria that allowed for interpersonal and racial animus to actually determine the highest scores. For example, Captain Bell had worked with Miller between 1997 and 2005, when Miller was demoted from the canine unit, purportedly. However, Captain Bell scored Miller higher than Plaintiff by three points.

Captain Bell also testified that, other than the military and education categories, the other categories were subjective. However, Lieutenant Mask's interview sheets suggest that even the objective criteria were susceptible to subjective manipulation. Although the guidelines suggested that someone with a high-school diploma should receive only a score of 80, Lieutenant Mask gave Miller, who had only a high-school diploma, an 83. When asked why he gave Miller three extra points, Mask was unable to explain. Furthermore, on the subjective score for "job knowledge," Mask scored Miller higher than Plaintiff, but he could not remember any explanation for the scores, but explained that Miller's "presence" in the interview would have contributed to the better score. Overall, Lieutenant Mask granted Miller a score that was three points higher than Plaintiff's score—a 98, whereas Plaintiff received a 95.

"Without some indication of the factual basis or specific reasons for [Plaintiff's] interview score, the score says nothing about whether her non-selection" was the product of discriminatory animus. Instead, the score "is at least as consistent with discriminatory intent as it is with nondiscriminatory intent" because Plaintiff may well have received lower scores because of her race and gender. *Alvarado*, 492 F.3d at 617 (citing *Patrick*, 394 F.3d at 317).

In this case, there are factual questions concerning the subjective criteria articulated by Defendant as its legitimate, nondiscriminatory reason. Defendant's blanket statement that Plaintiff must not have interviewed as well as the other candidates does not provide the

7

Court with a clear and specific basis to evaluate Defendant's subjective assessment of Plaintiff. This is true especially because panel members did not quantifiably assert that Plaintiff was less qualified than the comparators. Indeed, at least one panel member testified that had he considered work experience, he "absolutely" would have ranked Plaintiff higher than the other candidates. Defendant has pointed to no evidence in the summary judgment record that clarifies or expands upon why Plaintiff received the relatively low interview score. Therefore, Defendant's ostensibly legitimate, nondiscriminatory reason for Plaintiff's non-selection—her performance in the promotion and selection process—is insufficient to satisfy Defendant's burden of production. *See Alvarado*, 492 F.3d 605, 617 (5th Cir. 2007) (citing *U.S. E.E.O.C. v. Target Corp.*, 460 F.3d 946, 958 (7th Cir. 2006) (holding that the company's stated reason for not hiring one of the plaintiffs—its determination, based upon the plaintiff's interview, that he did not meet the requirements for the position—was insufficient to satisfy its burden of production because the company failed to articulate what criteria informed its decision and what requirements the plaintiff did not meet)).

"[R]eliance upon such vague and abstract criteria for rejecting [Plaintiff] could further add support to a finding of pretext." *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 322 (5th Cir. 2015) (citing *Patrick*, 394 F.3d at 317 ("The employer just might have found the candidate 'not sufficiently suited' *because of* a protected trait such as age"). However, as "[t]he mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext," Plaintiff has established pretext elsewhere. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003). For example, though Plaintiff was arguably more qualified than the other candidates, she failed to obtain three separate promotions. *See Stennett*, 619 F. App'x at 323 ("In this case, the plaintiff was denied seven different jobs notwithstanding experience, education,

8

and proven ability that made her qualified for them). Plaintiff has a bachelor's degree in criminal justice and forensic psychology, she spent six years in the Navy, and she was employed by a sheriff's department in Virginia for six years before moving to Tupelo.

Additionally, Plaintiff asserts that Defendant's inconsistent positions constitute evidence probative of pretext. Defendant vehemently argues that Plaintiff was not better qualified by pointing to her disciplinary records. However, Defendant also argues that the interview panel did not consider disciplinary records in making its decision, and that is why it felt comfortable promoting those with such allegedly poor records over the Plaintiff. Plaintiff also points to Defendant's timing of her promotion. Plaintiff was promoted to the sergeant position after filing her EEOC charge. Plaintiff argues that Defendant expanded the number of sergeants to create a position for her without other reason, and points to affidavit evidence showing that this reorganization was unnecessary and ineffective. However, Defendant counters that it planned to reorganize far before Plaintiff's charges were known, and the purpose of doing so is to ensure that a competent hierarchy is in force at all times within the department. Finally, Plaintiff alleges that Defendant has not hired any African Americans into the patrol division since the current administration assumed command in October 2013, but Defendant counters that an African American man was promoted to become a coordinator over city court.

In discussing the Plaintiff's burden in producing evidence of pretext, the Fifth Circuit has stated:

> Once the employee demonstrates that she met her burden of producing or relying on evidence that refutes or contests the employer's evidence of a legitimate, nondiscriminatory reason, there is often a genuine issue of material fact as to the veracity of that reason. In the context of a garden variety motion for summary judgment . . . the genuine issue of material fact precludes summary judgment.

*Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237 (5th Cir. 2016). Accordingly, summary adjudication would be premature and inappropriate.

  B. *School Resource Officer Promotion*

  Plaintiff's claim regarding the SRO position is subtly different. Although she maintains that the interview process was equally subjective, she has not provided the Court with evidence suggesting that Defendant failed to provide a factual basis for the subjective ranking system. In fact, the record is devoid of information pertaining to the details of this process. Instead, Plaintiff claims that the TPD chose a white male candidate to become SRO even though he did not have the qualifications required. She argues that SRO sergeants were historically required to be DARE "certified," but Defendant counters that SROs merely had to be DARE "qualified," if at all. Defendant blames the ongoing updates and evolving nature of the departments' Standard Operating Procedures for the confusion. These subtle differences are not clearly defined by either party, and are best considered by the jury at trial, where credibility determinations may be made. *Reeves*, 530 U.S. at 150, 120 S. Ct. 2097

*Conclusion*

  Defendant's proffered legitimate reason for Plaintiff's non-selection as patrol sergeant is insufficient to satisfy Defendant's burden of production. Furthermore, Plaintiff has brought forth evidence that Defendant's explanations are a mere pretext for discrimination. Therefore, Defendant's Motion for Summary Judgment is DENIED.

  SO ORDERED this the 13th day of September, 2017.

               /s/ Sharion Aycock  
               UNITED STATES DISTRICT JUDGE